HEARD APRIL TERM, 1876.

## CLARK *vs.* PORCELAIN MANUFACTURING COMPANY.

When the Court allows the submission of a case upon brief and printed argument, if an argument is not filed within the time fixed by the order the Court will render its decision without it.

A motion to set aside a judgment by default against a corporation, on the ground that the summons was addressed to the President and General Agent of the corporation, and stated that, on failure to answer, "judgment will be taken against you," refused, it appearing that the summons was properly entitled, that the complaint annexed to the summons, and which, with the summons, was served on the President, was regular and in proper form, and that the President knew, when served with the summons and complaint, that the action was against the corporation.

A motion made after the lapse of four years to set aside a judgment by default against a corporation, on the grounds that the officers who contracted the debt had no authority to contract it or to draw or accept the draft which was the subject matter of the action, and that the omission to defend the action was caused by accident and the neglect of the President of the corporation, refused.

BEFORE CARPENTER, J., AT EDGEFIELD, JULY, 1875.

Motion to set aside a judgment by default, entered by J. M. Clark & Sons against the Southern Porcelain Manufacturing Company, on March 18, 1871.

The case is as follows:

The action of J. M. Clark & Sons was commenced by summons' with complaint annexed, on the 3d of February, 1871. It was served on James Hope, President, and George Schaub, General Agent of the company, on the 8th and 9th of February, 1871.

The title of the summons was "John M. Clark, Amos K. Clark and John W. Clark, partners in trade, under the name and style of J. M. Clark & Sons, plaintiffs," *vs.* "The Southern Porcelain Manufacturing Company defendants." It was addressed to "James Hope, President, and George Schaub, General Agent of the Southern Porcelain Manufacturing Company, defendants in this action," and its conclusion was as follows:

"If you fail to answer this complaint within the time aforesaid, [twenty days] the plaintiffs will take judgment against you for the sum of $5,090.64, with interest at the rate of seven per cent. per annum from the third day of February, 1871, and costs."

The complaint, which was properly entitled, was as follows:

The complaint of the above named plaintiffs respectfully shows to this Court that the defendants, by G. Schaub, General Agent, and R. B. Bullock, President of the Southern Porcelain Manufac-

turing Company, on the eighth day of January, one thousand eight hundred and sixty-eight, at Augusta, State of Georgia, made their certain draft in writing whereby they promised to pay, three months after date thereof, to J. M. Clark & Sons, plaintiffs, the sum of $4,254 56, and the said payee thereof endorsed the said draft to J. M. Clark & Sons, the plaintiffs; and they believe that when the said note became due and payable it was duly presented for payment to the said George Schaub, General Agent, and R. B. Bullock, President of said Southern Porcelain Manufacturing Company, at their office for payment, and payment thereof was duly demanded, but the same was not paid but was protested, and that due notice thereof was given to the defendants at their office.

And the plaintiffs further saith that they are now the lawful owners and holders of the said draft, and that the defendants are indebted to them thereupon in the sum of $5,090.64 principal, together with interest.

Wherefore the plaintiffs demand judgment against the said company, defendants, for the said principal sum and interest, and protest.

The following is a copy of the draft mentioned in the complaint, with the endorsements thereon:

AUGUSTA, GA., January 8, 1868. [Stamps.]

$4,254.56.

[STAMPS.] Three months after date, pay to the order of J. M. Clark & Sons, $4,254.56, value received, and charge the same to account of

G. SCHAUB,

General Agent Southern Porcelain Manufacturing Company.

To Colonel R. B. BULLOCK, President Southern Porcelain Manufacturing Company, Augusta, Ga.

Endorsed on the face:

"Accepted. R. B. BULLOCK,

"President Southern Porcelain Manufacturing Company."

"Note protested for non-payment April 11, 1868.

"ADAM C. JONES,

"Notary Public.

"Fee and stamps, $3.25."

Endorsed on back:

"JOHN M. CLARK & SONS. Pay G. M. Thew, Cashier, or order."

| | | |
|---|---:|---:|
| Credited by proceeds of sale of clay, 150 casks, January 29, 1869 | $117 | 59 |
| Credited by proceeds of sale of clay, 10 casks, August 22, 1870 | 29 | 58 |
| | $148 | 17 |
| Interest computed | 17 | 42 |
| | $165 | 59 |

On March 2, 1875, the defendants served notice on plaintiffs' attorney of a motion to vacate and set aside the judgment on the following grounds:

1. That in this action the only summons ever issued or served was not directed to the defendants, the Southern Porcelain Manufacturing Company, and did not require the said company (the defendants) to answer the complaint of the said plaintiffs and serve a copy of their (said defendants) answer as provided by law, but was directed to James Hope, President, and George Schaub, General Agent of said company, and required them (said Hope, President, and George Schaub, General Agent,) to answer said complaint and serve a copy of their answer to the same.

2. That R. B. Bullock, late President, and George Schaub, General Agent of said company, had not, nor had either of them, any authority to contract on behalf of the said company the debt sued for in this action.

3. That if the said R. B. Bullock, late President, and George Schaub, General Agent of said company, were ever authorized, on behalf of the said company, to contract the aforesaid debt to the said plaintiffs, yet they were not, nor was either of them, ever authorized to secure such debt to the said plaintiffs by a draft drawn or accepted on behalf of said company.

4. That the omission of the said company to defend the action in this case against them was caused by accident and mistake on the part of their President, James Hope.

The motion was founded on copies of the summons and complaint and the following affidavits:

The undersigned, James Hope, being first duly sworn, deposes that he is the President of the Southern Porcelain Manufacturing Company, a body corporate under the law of the said State, and

having its place and seat of business within the portion of the said County of Aiken formerly comprised within and parcel of the County of Edgefield, in the said State; that during the month of February, A. D. 1871, seven several suits were instituted in the Court of Common Pleas for the said County of Edgefield against the said corporation the Southern Porcelain Manufacturing Company; that this deponent, after conferring with divers of the stockholders, and after advising with legal counsel, became fully convinced that there were valid and sufficient grounds of defense to each and all of the said several actions against the said company, and that thereupon this deponent determined that the copies of the summons and complaints in the said actions served upon this deponent as President of the said company should be forwarded to J. P. Carroll, Esq., a member of the bar in the said State, to appear to and defend the said actions on behalf of the said company as their attorney at law, and for that purpose the said copy summons and complaints in *all* the said several actions, as this deponent supposed and believed, were delivered by him to the Hon. Charles J. Jenkins, one of the stockholders in said company, to be forwarded by him to the said J. P. Carroll, at his residence, in Columbia, in the said State; that among the actions brought as aforesaid against the said company was one at the suit of John M. Clark, Amos K. Clark and John W. Clark, partners in trade, under the name and style of J. M. Clark & Sons; that the summons and complaint in the action at the suit of J. M. Clark & Sons were served upon this deponent some ten days or more prior to the service upon him of the summons and complaints in the other actions against the said company, and thereby, as this deponent believes, became separated from the copy summons and complaints in the other actions against said company served upon this deponent; that through this deponent's oversight and mistake (thus caused as he believes) the copy summons and complaint served upon him in the action aforesaid, at the suit of· J. M. Clark & Sons, were not delivered to the said C. J. Jenkins nor forwarded by him to the said J. P. Carroll; that by reason thereof the said J. P. Carroll made no defense on behalf of the said company to the said action at the suit of J. M. Clark & Sons, and judgment by default therein was recovered by them in the Court of Common Pleas for the said County of Edgefield on the 1st day of March, A. D. 1871, against the said company, for the sum of $4,955.90, besides costs of suit; that this deponent was

wholly unaware that said judgment had been recovered against the said company by the said J. M. Clark & Sons until very recently, when the Sheriff of Aiken County, aforesaid, proceeded to levy upon the property of said company and advertise the same for sale, under the execution issued to enforce the said judgment; and this deponent believes that the stockholders of the said company were in like ignorance with himself as to the recovery of the said judgment, except perhaps one of them, Dr. George Schaub, the drawer of the draft hereinafter mentioned.

This deponent further says: That the draft upon which is founded the action at the suit of J. M. Clark & Sons against the said company was drawn upon R. B. Bullock, then President of the said company, by George Schaub, its General Agent, not under any authority, real or supposed, conferred upon him (Schaub) by said company, but at the instance and by the direction of said Bullock alone, as this deponent is informed and believes; that said Bullock was wholly unauthorized to accept or cause to be drawn such draft for or on behalf of said company; that at the last meeting of the stockholders of said company, with a lawful quorum, prior to January, 1868, to wit, on the 10th September, 1866, the said stockholders made an assessment of fifty per cent. upon their capital stock in order to raise the sum of $50,000 to be lent and advanced to the said company for the express purpose of satisfying all its indebtedness, and to furnish a working cash capital of $7,000 to meet current expenses in carrying on the operations of said company in the digging, manufacturing and sale of their clay; that the original book of minutes containing the proceedings referred to of the said stockholders has been lost or mislaid, and this deponent refers to a copy of the resolutions adopted by them on 10th September, 1866, to be found at pages 32 and 33 of the appeal brief in the case of the said company vs. George M. Thew, Cashier of the National Bank of Augusta, of which brief a copy is already in the possession of J. L. Addison, the attorney of said J. M. Clark & Sons, as this deponent is informed and believes; and this deponent also says that he is advised by the said attorney of the said company, after being fully informed of all the material facts involved, that the said company have a fair, valid and effectual defense to the demand and claim of the said J. M. Clark & Sons, upon which their said judgment has been recovered; and that very recently this deponent has found among his papers the copy sum-

mons and complaint served upon him in the aforesaid action at the suit of J. M. Clark & Sons, and copies of the same are hereto annexed.

And this deponent further says that the said R. B. Bullock was never in anywise authorized by the said company to contract on their behalf the debt secured by the said draft, and that the absence of all authority on the part of the said Bullock to contract such debt on behalf of said company is shown by the proceedings of the stockholders of the same on the 10th September, 1866, hereinabove mentioned and now again referred to.

The resolutions to which Mr. Hope refers in his affidavit are as follows:

"1. That an assessment of fifty (50) per cent. upon the capital stock of the company, as recommended by the President, be made, with the proviso that the amount paid by each stockholder be credited to him on the books of the company as a loan, with interest at two (2) per cent. per month ; the said amount, principal and interest, to be secured by a resolution of the stockholders, pledging the property and profits of the concern for its payment; the entire net earnings of the works to be expended in liquidation of this debt before declaration of any dividend upon the original stock.

"2. That the shareholders be requested to notify the President of their acceptance of the terms proposed, and that he be authorized to take their notes at ninety days, without interest, bearing date October 1st, 1866.

"3. That if the shareholders do not respond to the above call by the 1st of October next, the President be, and is hereby, authorized to sell the property and works of the company to pay the debts of the concern; and any balance arising from such sale, over and above the amount of said debts, be divided *pro rata* among the stockholders."

### AFFIDAVIT OF J. P. CARROLL.

"The undersigned, J. P. Carroll, being first duly sworn, deposes: That in or about the month of February, 1871, the copy summons and complaints in six several actions brought against the Southern Porcelain Manufacturing Company, a body corporate under the

laws of this State, were sent to this deponent by express, with in-
structions. to defend the said actions on behalf of said company;
that the said papers were sent to this deponent by the Hon. Charles
J. Jenkins, a stockholder in the said company; that this deponent,
after examining into the said actions and the causes of the same,
became fully satisfied that to each of them there were good and
valid grounds of defense; that about the time of the commence-
ment of the said actions another suit was also brought against the
company—that is to say, the action at the suit of J. M. Clark &
Sons, referred to in the affidavit of James Hope hereto annexed;
that the grounds of defense to the other said actions are all of them
applicable to the said action of J. M. Clark & Sons; and that, upon
reference to the proceedings of said company, mentioned in the
affidavit of James Hope aforesaid, this deponent is fully convinced
that R. B. Bullock, then President of the said company, had no
right to contract on behalf of the said company the debt which is
set up against them by the said J. M. Clark & Sons, or to accept or
cause to be drawn the draft by which said debt is evidenced, and a
copy of which is endorsed upon the complaint in the said action at
the suit of J. M. Clark & Sons; and that this deponent is informed
by the General Agent of the said company, George Schaub, that he
drew the said draft at the mere direction of the said R. B. Bullock
and without any authority whatever to do so conferred upon him
by the said company.

"And this deponent further says that at the request of the said
George Schaub he addressed a letter to J. L. Addison, Esq., the
attorney of J. M. Clark & Sons, asking on behalf of the stock-
holders of said company some forbearance on the part of J. M.
Clark & Sons in the enforcement of their said judgment, and that
when said letter was written this deponent was wholly unaware of
the circumstances under which said judgment had been recovered,
or of the grounds of defense to the demand upon which the same is
founded."

A second affidavit of James Hope was also submitted; it is as
follows:

James Hope, being first duly sworn, deposes that he is now the
President of the said company and the successor in office of the
former President, Rufus B. Bullock; that the indebtedness evi-

denced by the draft upon which this action was brought arose out of certain transactions between the said plaintiffs and the said R. B. Bullock, then the President, and George Schaub, the General Agent of said company, the defendants; that this deponent had no personal knowledge whatever of these transactions, and all his information touching the same was derived from the said George Schaub; that when this deponent was served with process in this action he was informed and assured by the said George Schaub that the demand or claim of said plaintiffs against said company was fair, just and valid and could not be successfully opposed; that confiding in such information and assurance this deponent at first had determined to enter no appearance and make no defense to this action, and this deponent admits that he may have said so, and probably did say so, when conversing upon the subject with other persons. But this deponent further says that *afterwards, and within a few days after the commencement of this action*, he consulted with the Hon. Charles J. Jenkins, one of the stockholders of the said company, and had a full and free conference with him as to the plaintiffs' said demand, and as to other like demands upon which actions about the same time had been brought against the said company, and that this deponent was advised by the said C. J. Jenkins that the said demand of the plaintiffs and the other like demands sued upon about the same time were none of them legal or valid against the said company for want of authority on the part of the said R. B. Bullock, President, and George Schaub, General Agent, as aforesaid, or either of them, to contract such debts on behalf of the said company; and, thereupon, this deponent, with the concurrence and co-operation of the said C. J. Jenkins, determined that appearances should be entered and defenses made in each and all of the said several actions, and for that purpose that J. P. Carroll, a member of the bar of the said State, should be retained on behalf of the said company.

The motion was resisted on the following affidavits, submitted on behalf of plaintiffs:

AFFIDAVIT OF JOHN M. CLARK, ONE OF THE PLAINTIFFS.

" Personally came before me John M. Clark, one of the partners in trade under the name and style of John M. Clark & Sons, who, upon being duly sworn, says that the Southern Porcelain Manufacturing

Company—being indebted to the firm of John M. Clark & Sons, the plaintiffs, for provisions furnished the hands working at the works of the Southern Porcelain Manufacturing Company, in Edgefield County, on the 8th day of January, A. D., 1868, purchased by Dr. G. Schaub, the Superintendent and General Agent of said company, for the sum of $4,254.56,—made their note at Augusta, Georgia, January 8th, 1868, payable to J. M. Clark & Sons, three months after the date thereof, for the sum of $4,254.56, value received, and signed G. Schaub, General Agent Southern Porcelain Manufacturing Company, endorsed and accepted across the face by, and signed by, R. B. Bullock, President Southern Porcelain Manufacturing Company.

"And this deponent further swears that several drafts had been drawn, like the one above set forth, by G. R. Schaub, General Agent Southern Porcelain Manfacturing Company, and endorsed by R. B. Bullock, President of said company, previous to the time this was drawn, for provisions advanced to and for the use of said company, and all had been paid except this one, and before commencement of this suit.

"And this deponent further swears that said note being due and owing on the first day of January, 1871, this deponent placed the draft above mentioned for $4,254.56 in the hands of J. L. Addison, attorney at law, at Edgefield Court House for collection, with instructions to sue the note at once, which this deponent was informed was done; that shortly thereafter this deponent was informed by James Hope, then President of the said Southern Porcelain Manufacturing Company, that he had been served with the complaint and summons in this action and was not going to set up any defense to said cause of action; that the debt was justly due and should be paid first. That several conversations were had between James Hope, President of said company, and this deponent' in the first part of the year 1871, in February and March; that James Hope asked this deponent to give him every assistance he could to have set aside the judgment the National Bank of Augusta, Georgia, held against the Southern Porcelain Company, which this deponent promised to do, and did do; that this deponent was informed, about March 1st, 1871, by the attorney of said John M. Clark & Sons, that no defense had been made and judgment had been obtained by default; that this deponent informed more than one of the Directors that judgment had been obtained, and this

deponent is satisfied most of the stockholders of the said company knew of said judgment, and expressed themselves satisfied that John M. Clark & Sons had taken steps to secure their debt for the provisions so advanced to said company, and desired that as soon as the debt of the National Bank of Augusta, Georgia, should be set aside that the debt of John M. Clark & Sons, the plaintiffs, should be first paid; and this deponent agreed with the officers of said company to wait until the bank debt was cleared up in some way before enforcing the judgment of plaintiffs; that in the month of November, 1874, this deponent was informed by his attorney that the judgment of the bank against said company had been set aside by the Supreme Court of South Carolina. This deponent then instructed his attorney to enforce the collection of said judgment of plaintiffs against defendants, and shortly thereafter the property of the Southern Porcelain Company was advertised to be sold to pay the debt of plaintiffs; that no objection was ever made, from the 1st day of January, 1871, until about the 10th January, 1875, by the President of the Southern Porcelain Manufacturing Company, the General Agent, Directors or stockholders of said company."

AFFIDAVIT OF J. L. ADDISON, PLAINTIFF'S ATTORNEY.

J. L. Addison, being duly sworn in this action, deposeth: Says that in 1870 this deponent was retained as counsel in the cause of *George M. Thew, Cashier of the National Bank of Augusta, Ga.*, vs. *The Southern Porcelain Manufacturing Company.* That in January, 1871, this deponent was requested to take two notes which plaintiff held against the defendants. One of the notes, the larger one, is the one upon which this judgment is founded; the smaller note was sued upon, but as the defendants had claimed a discount said cause was discontinued in February, 1871.

And this deponent further deposeth: Says before receiving these two notes for collection this deponent was informed by the officers of said company there would be no defense; and after the complaint and summons was served upon James Hope, the President of the said Southern Porcelain Company, and George Schaub, the General Agent and Superintendent of said company, this deponent had a conversation with both of them in the office of W. H. Addison, at Edgefield Court House, in regard to the said cause of action, and this deponent was then assured by Dr. G. Schaub and James

Hope and W. H. Addison, then attorney for said company, that no defense would be set up and that no answer would be filed, as there was no valid defense could be made—that the notes were given for valuable consideration. James Hope did say in said conversation that Clark had not given the company credit for a small amount he ought to have done. This deponent then agreed to discontinue the suit on the small note, which was satisfactory to all parties; that this deponent further agreed to wait until the said James Hope and George Schaub returned to Augusta and to consult with the stockholders about the defense to this action, and did wait several days after the expiration of the usual time for answering before the judgment was entered up; that no answer or demurrer was filed up to the first of March, 1871, and said judgment was entered up regularly at Edgefield Court House. That said complaint, summons, judgment and execution, after being regularly entered, remained in the office at Edgefield until in November, 1874, when all of said papers pertaining to said cause were transferred to Aiken, where they remained until the first of January, 1875, when this deponent was informed by J. P. Carroll, attorney for the defendants, that an application would be made before Judge Carpenter, at Columbia, to vacate and set aside said judgment in this cause. Upon this information, this deponent carried all the papers back to the Clerk's office at Edgefield, and said papers remained in said office until the 23d January, 1875, after this deponent was served with notice to appear at Barnwell C. H. on the 27th inst. That said papers were at Aiken when execution was issued, when levy was made, and were only removed to prepare the defense to said cause now being made. That this deponent requested the Clerk to give the defendants' counsel in this cause copies of all papers if called for, which has been done. That since said judgment was entered in March, 1871, there has never been any complaint made by the officers of said company or stockholders or Directors, but this deponent has been repeatedly assured that as soon as the bank cause was disposed of this judgment would be paid first, and the first intimation this deponent ever had any attempt would be made to set aside was in this month. That no longer than the 14th December, 1874, the attorney for said company assured this deponent that said judgment would be paid within sixty days, or by the 1st of February, 1875. Upon this assurance the sale of the property of the Southern Porcelain Company was postponed. That this deponent

never has heard of any objections being made either by any of the stockholders, Directors or Agent, or President of said company from March, 1871, until 1st January, 1875, and believes they all knew of it; that the attempt now made is only to delay the collection of said debt; that there is not now, nor never has been, any valid defense to said note; that said debt was made by President Bullock, as this deponent is informed and believes, sued upon and judgment obtained regularly, and more than two years has expired since the judgment was entered up and no effort ever has been made to vacate or set the same aside by the officers of said company; that James Hope and George Schaub, who have been the only officers of the company since 1871, have known of the existence of said judgment since March, 1871, and H. W. Addison, one of the attorneys for said company, knew of the existence of said judgment; and this deponent believes J. P. Carroll, attorney for said company, knew of said judgment, and in many instances since 1871, in March some, the stockholders have promised if the bank judgment was set aside the plaintiffs should be paid at once, and this was the cause said judgment was not enforced before this time.

### AFFIDAVIT OF H. W. ADDISON.

H. W. Addison, being duly sworn, says on oath that early in the year 1871 James Hope, then President of the Southern Porcelain Manufacturing Company, came to him saying that said company had been sued in five or six cases, to wit: by Clark & Sons, by Mahony, by McArle, by Clark, trustee, and by Gardner Foster; that either there was no defense or that he knew of no defense against the claim of Clark & Sons; that he believed the claim just and desired no defense to be made; that, as to the others, he desired and requested that deponent should enter defense and have the claims sifted as he knew nothing of the consideration, and would, upon his return to Augusta, Ga., get all the facts necessary for deponent's putting in the answer. The deponent further says that he believes that the said James Hope exhibited the summons and complaint in each case at the time; that deponent suggested to the said James Hope that it would be well to join Chancellor Carroll with him in the defense as he had already been employed to assist J. L. Addison and himself in setting aside the confession of judgment against the Southern Porcelain Manufacturing Company in favor of

the National Bank of Augusta; to this Hope assented. Deponent then told him to get up the defense to each case as early as possible and send the complaints and facts of defense either to deponent or Chancellor Carroll. The deponent thinks that he obtained two extensions of time from J. L. Addison, the opposing counsel, to put in the answers in the name of himself and Chancellor Carroll—it *may* have been in the name of Chancellor Carroll and himself in consequence of not getting the facts from Mr. Hope; thinks he wrote Mr. Hope to send facts and complaints to Chancellor Carroll, at Columbia,—at least he insisted upon Chancellor Carroll's drawing the answer, not only on account of his ability but also from the fact that his brother, J. L. Addison, was the opposing counsel; that the claim of Clark & Sons, of course, passed into judgment; that of the almost multitudinous consultations with James Hope since that time in connection with the cases above named, *i. e.*, those where defense was set up, and also the case of the bank above mentioned against the said company, he (Hope) never intimated in any manner that there ever existed any defense to the claim of J. M. Clark & Sons, or that any effort would be made to attack said judgment, but left the *impression* upon him at the time he was retained in the other cases that he desired John M. Clark & Sons paid; that he thinks it was some time during the past year that he heard for the first time of an attempt to upset the judgment of John M. Clark & Sons. Deponent knows nothing of the consideration of the claim of Clark & Sons.

The order of His Honor is as follows:

CARPENTER, J. After hearing the motion of defendants to vacate and set aside the judgment recovered and entered in this action, the affidavits submitted in support of and in opposition thereto, and the arguments of Mr. Carroll and Mr. Bacon for defendants, and of Mr. J. L. Addison and Mr. Youmans for plaintiffs, I am of opinion that whatever of technical inaccuracy or irregularity there may be in the plaintiffs' proceedings has been fully cured by the subsequent laches and action of defendants, and, if necessary, would be allowed to be corrected *nunc pro tunc;* and that as to the merits the grounds of the motion should have been taken by answer. It would require a far stronger case than that made by the facts to induce the Court, after such a lapse of time, and the forbearance shown by the plain-

tiffs to defendants, to vacate a judgment obtained and entered under the circumstances detailed in the affidavits. The plaintiffs furnished provisions, purchased by Schaub, the General Agent of the defendants, at the works of the defendants, at least as far back as January 8th, 1868, on which day the said General Agent gave their draft for the amount at three months to the plaintiffs, on the President of the defendant corporation, which was by said President accepted. Previous drafts drawn by the Agent on the President, for provisions advanced, were paid. This draft has never been paid; and whatever may have been the relative rights or liabilities of the parties to this action, and the drawer and acceptor of the draft, at the outset, on the views presented in favor of defendants, the subsequent action of the defendant corporation has ratified and confirmed the action of their General Agent and President and made it liable for the payment to plaintiffs.

As to whatever may be the rights of defendants against their Agent and President, it would not be, perhaps, pertinent to express an opinion; but it would not be either "*stricti juris*" or "*ex equo et bono*" to vacate the judgment. And it is therefore ordered that the motion be refused, with costs, and the plaintiffs be at liberty to enforce their execution, and that the papers and affidavits in regard to the motion, together with the motion and this order, be filed in the office of the Clerk of the Court for Edgefield County.

The defendants appealed.

*Carroll*, for appellants:

I. The only summons in this action ever issued or served was not directed to the defendants, the Southern Porcelain Manufacturing Company, and did not require the said company to answer the complaint of the said plaintiffs and serve a copy of their (said defendants') answer, as prescribed by law, but was directed to James Hope, President, and George Schaub, General Agent of said company, and required *them* (said Hope, President, and George Schaub, General Agent,) to answer said complaint and serve a copy of their answer to the same. Wherefore, it results that the said defendants have never been brought within the jurisdiction of the said Court, and that as against them all the proceedings in this action are absolutely null and void.

Section 151 of the new Code of Procedure (Rev. Stat., 599,) provides as follows: "The summons shall be subscribed by the plaintiff or his attorney and *directed* to the defendant, and shall require *him* to answer the complaint and serve a copy of *his* answer." It is manifest that the summons herein wholly fails to conform to the requirements of the statute, and it follows that no legal summons in this action was served upon the defendants. The legal consequence seems to be indisputable. The Section of our Code of Procedure which has been cited is a literal transcript from the New York statute upon the same subject: "Where the summons in an action is not legally served, the Court has no jurisdiction of the defendant, and all proceedings based on the pretended service are void."—Voorh. A. C., 133, n. c., and 1 Abb. Forms, 99, n. a., citing *Bulkely* vs. *Id.*, 6 Abb., 307. But the authority of decided cases is superfluous here, for our Code of Procedure expounds itself in its subsequent Section 162, Rev. Stat., 603, by the provision that, "from the time of the service of the summons in a civil action, or the allowance of a provisional remedy, the Court is deemed to have acquired jurisdiction and to have control of all the subsequent proceedings."

II. Where the party defendant has neither appeared nor made defense to the action, and no lawful summons has been issued or served upon him, such defect in the proceedings can with no semblance of reason be regarded as a mere "technical inaccuracy or irregularity;" is incurable by mere *laches* or delay on the part of the defendant where the rights of third parties have not intervened, and is incapable of correction or amendment *nunc pro tunc* or otherwise,—for, under such circumstances, in legal contemplation, the action has no existence whatever.

Section 150 of the Code of Procedure, Rev. Stat., 599, is in these words: "Civil actions in the Courts of record in this State shall be commenced by service of a summons." In this action there was no lawful summons issued or served. Nor is it pretended that such defect in the proceedings has been cured by appearance, or by answer or other pleading on the part of the defendants. Certainly they stand in no worse position than they would had they been served with a different summons from that on which the subsequent proceedings were based. In such a case, *Williams* vs. *Lanneau*, (4 Strob. L. R., 27,) it was ordered and adjudged that the execution, the judgment and all other proceedings be set aside.

"Serving the respondent," says the Court, "with a copy of a different summons did not make him a party to the case." But if the defendants are not parties but strangers to the action, and have never been brought within the power or control of the Court, then by no conceivable amendment can the proceedings in the case already had be made binding and obligatory upon them.

III. No *laches* or unreasonable delay in assailing the judgment of the plaintiffs can be justly imputed to the defendants, for, if credence be given to the affidavit of James Hope, neither himself nor any of the stockholders of the said company, (except their General Agent, Schaub,) were aware of the existence of the said judgment until, under the execution for its enforcement, the levy was made by the Sheriff in December, 1874.

IV. The motion to set aside the judgment, because no lawful summons was served upon the defendants, is not barred by the lapse of time, though computed from the day of its rendition; and, it is respectfully submitted, may be made as between the parties themselves at any time within five years at least next succeeding that date.

There is no statutory limitation in this State of the time within which motions to set aside judgments may be made. In *Mills & Co.* vs. *Dickson & Mills*, (6 Rich. L. R., 492,) such motions are said to be competent in all cases where "the writ of error would lie in England, (see *Mooney* vs. *Welsh*, 1 Mills, 133,) in which case substitution of a motion *here*, in open Court, in place of the writ of error *there*, is fully considered and decided, and has been acted upon ever since." To the case of *Barnes* vs. *Branch*, (3 McCd. L. R., 19,) is appended note (*a*) which well deserves consideration, and is in the following words: "In *Mooney* vs. *Welsh*, (1 Mills Const. Rep., 133,) Judge Cheves suggests that five years might be the time after which a motion may not be made, but this rule could only have been suggested in analogy to the Statute of Limitations; and, indeed, as to lands, the Act of 1824 extends it to ten years, and *quære* whether that time would not be most proper during which these motions may be made." In *Hickman* vs. *Armstrong*, (1 Brev. R. Pt., 1, vol. 2, 176,) the defendant had been served with process while attending a muster of militia. He made no defense, and judgment by default was entered against him. At the following Court he moved to set aside the whole proceedings, because of the illegal service of the writ. "The objection," says the Court, "was

taken in time. It may be made at any time before third persons acquire a right founded on the proceedings againt him (the defendant.) As between the parties themselves, the proceedings may be set aside at any time." In the opinion of this Court, filed 9th November, 1874, in the case of *Thew, Cashier,* vs. *The Southern Porcelain Manufacturing Company,* it is said: "According to the practice existing in this State, it would seem that if a motion to set aside a judgment was made in five years it would not be barred by lapse of time."

V. R. B. Bullock, late President, and George Schaub, General Agent of said company, had not, nor had either of them, any authority to contract, on behalf of the said company, the debt sued for in this action.

VI. If the said R. B. Bullock, late President, and G. Schaub, General Agent of said company, had authority, on behalf of the said company, to contract the aforesaid debt to the said plaintiffs, yet they were not, nor was either of them, authorized to secure such debt to the said plaintiffs by a negotiable draft drawn or accepted on behalf of said company.

(*a*). The utter absence of such authority is shown conclusively by the proceedings of the stockholders on the 10th September, 1866. In commenting upon these very proceedings this Court, in the case of *Thew, Cashier, appellant,* vs. *The Southern Porcelain Manufacturing Company, respondents,* (decided in November, 1874,) thus speaks: "The action, too, of the stockholders, in raising the amount to meet the liabilities of the company by an assessment upon themselves, to be secured by a lien upon the property and profits of the concern for its payment, is a clear intimation that they preferred to be themselves creditors of their own company rather than to stand in that position either to their President or others. It is also not without significance in another regard, and that is the apparent intimation by their action of freeing their corporation from debt and so keeping it, and, if they failed to raise the money through themselves, to sell the property and wind up the company."

(*b*). In Ab. Dig. of the Law of Corporations, 117, citing *Lawrence* vs. *Gibbard,* (41 Barb., 575,) it is said: "If the power of making and endorsing promissory notes for and in the name of a corporation is not *expressly* conferred upon its agents by the instrument by which he is appointed, general words at the conclusion thereof, authorizing him to do all other acts and things for and in

behalf of the said company that he may deem proper to further and protect its interests, cannot have that effect."—See also *Fulton Bank* vs. *New York and S. Canal Company*, 4 Paig., 134.

It is further said in the work just cited (Abb. Dig., 9): "One who is proved to have been 'the agent' of a manufacturing corporation is not presumed to have been authorized to make a note on behalf of the company. To render such a note valid, as against the company, the powers of the agent must be shown."—*Benedict* vs. *Lanting*, 5 Den., 283.

VII. The omission of the said company to defend the action against them in this case was caused by accident, inadvertence and mistake, or, at least, by "excusable negligence," on the part of their President, James Hope.

Such is the purport of the affidavit of James Hope, and there is no sufficient evidence adduced to disprove it.

VIII. The plaintiffs' supposed forbearance towards the defendants in the enforcement of their judgment resulted solely from the fact of their well knowing that, even if the property of the defendants were permitted to be sold under that judgment, still the said plaintiffs could by no possibility receive actual payment out of the proceeds of such sale until the lien of the prior judgment at the suit of Thew, Cashier of the National Bank, of Augusta, had been removed.

The plaintiffs' supposed forbearance means, therefore, no more than their having refrained from an act vain and nugatory in respect of their own interests—a forbearance enforced upon them by circumstances and in no sense proceeding from their own free will.

IX. The affidavits of the said John M. Clark, adduced on behalf of the plaintiffs, ought not to be considered by the Court because of its having been sworn to before one of his attorneys engaged in this proceeding.

The rule of this Court, numbered 16, declares that "no affidavit will be considered by the Court which has been sworn to before an attorney engaged in the cause or motion or before any party interested therein."

X. The affidavits, on the part of the plaintiffs, furnish no sufficient evidence of any valid ratification or confirmation by the said company, or its stockholders, of the acts of the said Bullock and

Schaub in contracting and securing by draft, on behalf of said company, their alleged debt to the plaintiffs, because the statements of those affidavits are vague and indefinite and make no mention of the names of any of the said stockholders to whom such ratification is imputed, save only the name of James Hope, the present President of said company; because it is entirely consistent with those affidavits that the declarations of the unnamed stockholders importing such ratification were founded solely upon partial representations made to them by said John M. Clark, and without full knowledge of all the material facts necessary to an understanding of their rights in that behalf, and because such ratification is directly in conflict with the formal resolutions and the plan of conducting the operations of their said company, adopted by the stockholders deliberately on the 10th September, 1866.

No personal knowledge of the transactions out of which the plaintiffs' alleged debt arose is imputed to the stockholders who are supposed to have ratified and confirmed that debt. Whence did they derive their information respecting it? Most probably from the representations of the plaintiffs themselves, or some one of them ; and as to the purport of such representations, we are wholly uninformed.

The stockholders of a corporation may ratify an unauthorized act of its agent or officer, "if they have full knowledge of all the circumstances of the case, *but not otherwise.*"—Ang., 2 Ames, § 304; Abb. Dig., 674; Circuit decision of Judge Wardlaw in *Bivingsville Manufacturing Co.* vs. *Bobo,* 11 Rich L. R,, 393. In *Dabney* vs. *Stevens,* (40 N. Y. Pr. R., 350,) the law is thus announced : "It must be shown by the party asserting such ratification that the resolution or acts of the corporation, or of their Directors or Trustees, relied on as constituting the ratification, were performed with a full knowledge of all the material facts necessary to an understanding of their rights. I have been unable," (adds the Judge, who delivered the decision,) "to find a single case in which subsequent ratification has been inferred, without proof that the Board of Directors or Trustees had such knowledge."

No such proof has been adduced in regard to the unnamed stockholders who are alleged to have ratified the acts of their officers, Bullock and Schaub, in contracting on behalf of the defendants the debt set up by the plaintiffs. But if the stockholders referred to

were apprised of the material facts necessary to an understanding of their rights, then that they should ratify and confirm the unauthorized debt contracted with the plaintiffs is most strange and well nigh incredible. It would involve this much at least: that though aware of Bullock's having appropriated the "working cash capital of $7,000" furnished him, as also the $56,000 procured from the National Bank of Augusta on the credit of their company, yet they were content to submit to a further spoliation at his hands to the amount of more than five thousand dollars, the sum which the plaintiffs claim to be due them, and while resisting each and every other debt incurred by Bullock after 10th September, 1866, that they, without motive or reason, should carve out a special exception in favor of the plaintiffs' demand.

XI. The affidavit of James Hope, adduced by the defendants, though conflicting in some particulars with the affidavits on the part of the plaintiffs, is strongly supported by corroborating circumstances; and it is respectfully submitted that as to the material facts in controversy between the parties, and affecting the validity of the said judgment, the Circuit Judge ought to have directed an issue to be joined and submitted to a jury for trial.

Among the circumstances which corroborate the affidavits of James Hope, are: the proceedings referred to of the stockholders on the 10th September, 1866; the want of all original authority on the part of Bullock and Schaub, or either of them, to contract on behalf of the company the debt claimed by the plaintiffs; the fact that such want of authority is not denied or questioned by any of the affidavits on the part of the plaintiffs; and the fact that of the seven actions brought against them for debts contracted by Bullock since the 10th September, 1866, the defendants have contested six of them, and upon grounds directly applicable to the seventh, which was the action at the suit of these plaintiffs. In a proceeding like the present, the facts upon which the defendant relies for impeaching the judgment are not required to be established by full and plenary proof. It is sufficient if, by the evidence on the part of the defendant, they are made to appear *prima facie* or presumptively only. In *Robinson* vs. *Stewart*, (1 Rich. L. R., 3,) upon a motion for leave to file a suggestion to try whether a confession of judgment was fraudulent or not, Judge Evans, as the organ of the Court, says: "The rule seems to me to be that the showing must

be such as to excite a reasonable ground of suspicion." The
defendants have had no opportunity to reply to the evidence which
has been adduced in opposition to their motion, and respectfully
submit that the material facts in controversy should now be put in
issue and be determined by a jury.

*Youmans,* contra:

Defendant being indebted to plaintiffs before January 8, 1868,
for provisions furnished, the General Agent of defendant on that day
gave his draft as such on the President in accordance with the
course of business between the parties in this regard.

The successor of the President, the General Agent and the attorney
of defendant all admitted the liability of defendant in the action
brought, and informed plaintiffs and their attorney that there was
no defense, and none would be made. After judgment and execu-
tion, at the request of defendant and assurances of payment down
to as late as December 14, 1874, defendant, on technical grounds,
moved to vacate the judgment, and on this being refused, appeals.

The decision of the Circuit Judge, taken in connection with the
affidavits, shows conclusively, it is submitted, that the motion should
not prevail. As to alleged irregularity in the service, it need only
be said that the service was regular.—Code, § 157. As to the
irregularity in the direction of the summons, it was a mere irregu-
larity and waived by the default. Defendant was plainly named
in the title of the case as the only defendant, and the Court will
allow amendment if necessary.—Code, § 196. As to the second
and third grounds relied on in support of the motion as matters of
fact, they are contradicted. As matters of law, they should have
been set up by answer, were waived by default and active and pas-
sive acquiescence, and the delay is fatal.—Code, § 197. As to the
fourth ground, the facts show that the omission of the company to
defend the action was *not* caused by accident and mistake on the
part of the President. The affidavits of Clark, J. L. Addison,
attorney of plaintiffs, and H. W. Addison, attorney of defendant,
all show that to grant this motion would not be in furtherance of
justice (Code, § 197); but would allow defendant, after enjoying for
years the indulgence which they craved from plaintiffs, to set up
against a new action the Statute of Limitations and thus defeat a
claim whose justice has been repeatedly admitted.

July 1, 1876.   The opinion of the Court was delivered by

MOSES, C. J.   At November Term, 1875, this case, with leave of the Court, was to be submitted on the brief and argument.   The points and authorities on the part of the respondents were not filed until the April session.   Hence the delay in the decision.   Whenever hereafter the Court allows the submission of a cause, if the printed argument on either side is not presented within the time fixed by the order, it will proceed to render judgment on the brief and papers.

In the case at bar it appears that one Schaub, styling himself, as he was, the General Agent of the Southern Porcelain Manufacturing Company, a corporation chartered by the State and carrying on business within its limits, on January 8, 1868, drew a draft for $4,254.56 on R. B. Bullock, addressed to him as President of the said company, (which office he then filled,) payable to J. M. Clark & Sons, three months after date, which, on presentment, was duly accepted and afterwards protested for non-payment.

A summons was issued on the said draft, directed to James Hope, President, and George Schaub, General Agent, of the Southern Manufacturing Company, accompanied with a complaint, both dated February 3, 1871, and entitled "John M. Clark, Amos H. Clark and John W. Clark, copartners in trade, under the name and style of J. M. Clark & Sons, plaintiffs, vs. The Southern Porcelain Manufacturing Company, defendants," which, on the 8th and 9th of the same month, were personally served on Hope and Schaub. The plaintiffs, in their complaint, set forth the said draft, made by its drawer in his official character, on the said Bullock as such President, its acceptance, non payment and protest, and "demand judgment against the company, defendants, for the said principal sum, interest and protest."   The summons, addressed, as already stated, to Hope, President, and Schaub, General Agent of the said company, styling it by name, required them to answer the complaint in the action within twenty days after service, and, on failure, "the plaintiffs will take judgment against you for the sum of $5,090.64, with interest at the rate of seven per centum from the third day of February, 1871, and costs."   No notice of appearance having been given or answer filed, judgment by default was entered on 18th of March, 1871, by the said plaintiffs, against the

said Southern Porcelain Manufacturing Company, for the sum demanded.

On March 2, 1875, notice was served on the respondents that the appellant, on a day named, would move before His Honor Judge Carpenter to set aside the judgment recovered and entered in the action, upon the following grounds:

1. That the only summons ever issued or served was not directed to the defendant, the Southern Porcelain Manufacturing Company, and did not require the said company (the defendants) to answer the complaint of the plaintiffs and serve a copy of their (defendants') answer as provided by law, but was directed to James Hope, President, and George Schaub, General Agent of said company, and required them to answer said complaint and serve a copy of their answer to the same.

2. That Bullock, late President, and Schaub, General Agent of said company, had not, nor had either of them, any authority to contract on behalf of the said company the debt sued for in the action.

3. That if they were even authorized to contract the said debt on behalf of the said company, yet they were not, nor was either of them, ever authorized to secure such debt to the plaintiffs by a draft drawn or accepted on behalf of said company.

4. That the omission of the company to defend the action in the case against them was caused by accident and mistake on the part of their President, James Hope.

After a full hearing, the motion was dismissed by the Judge below, and the argument here has failed to impress us with any error in his conclusion.

The judgment is entered up in proper form against the company, who, it was clear to the President, by the process served upon him, was the party against whom it issued, and of whom a recovery of the amount due on the draft was sought. If there could be any reasonable doubt that the language of the summons and complaint were not sufficient to impart a knowledge of what they proposed, it is removed by the affidavits of the President himself and those of Mr. J. L. Addison and Mr. H. W. Addison, which show beyond question that the President was well advised of the purpose designed by the summons. Both the summons and complaint were served on the person who by the 157th Section of the Code is

designated as the proper party to be served " if the suit be against a corporation." There was, then, at least, a formal and proper service, and the question really to be determined on this first ground is whether the want of technical form in the summons amounts to such a legal defect as could not be cured by the name of the company through its President? The summons was properly endorsed in the title of the cause, according to the thirteenth rule of the Circuit Court, and, besides, expressed on the face of it the parties, plaintiffs and defendant, referring by name to the company as defendant. The President, unless there be another head of a corporation, is recognized as the proper person on whom process intended to bring it into Court must be served. If he refrains, after his knowledge of the purpose of the process, to cause his company to be represented, that its defense, if any, may be duly made, the consequences of his neglect must fall upon those who constituted him their agent to act in their behalf.

In his affidavit of March 1, 1875, the President refers to the summons and complaint served upon him as the institution of a suit against the company. In that of the 22d day of the same month he says that, although he had no personal knowledge of the transactions between the plaintiffs and the said Bullock, President of the company, which resulted in the indebtedness evidenced by the draft, when he was served with the process, he was informed by Schaub that the claim was valid and could not be successfully opposed, on which he determined not to appear and make defense for the company; that afterwards he concluded to defend and employ Mr. Carroll as counsel for the company. His first affidavit alleges that by some oversight or neglect the papers in this case were not sent to his attorney, with process served in other causes against the company at the same time, and thus the default in appearance and answer occurred. Mr. J. L. Addison, in his affidavit of June 26, 1875, says that the draft and another paper of the said company, being in his hands for collection, before suit he was informed by its officers there would be no defense, and, after service of the summons and complaint, in a conversation with Mr. Hope, the President, Mr. Schaub, the General Agent and Superintendent, in regard to the case, he was assured by them, and also by Mr. H. W. Addison, the attorney for the company, that no answer would be filed, as no valid defense could be made, and that the

notes were given for a valuable consideration; that since the judg-
ment he has been repeatedly assured by the officers of the company
that the debt would be first paid after a certain cause of the
National Bank of Augusta against the company was disposed of,
and that as late as 14th December, 1874, he was assured by the
attorney of the company that by the 1st of February ensuing the
judgment would be satisfied. On this assurance the sale of the
property by the Sheriff was postponed. That Hope and Schaub
knew of the judgment since March, 1871; that H. W. Addison,
the counsel of the company, knew of it; and that in many instances,
from its entry, some of the stockholders promised if the bank
judgment was set aside the plaintiffs should be paid at once. The
affidavit of Mr. H. W. Addison confirms that of Mr. J. L. Addison
as to the knowledge of Hope of the character of the ·debt and its
validity in the following expressive terms: " In the almost multi-
tudinous consultations with James Hope in connection with the
cases above named, (that is, those where defense was set up, and also
the case of the bank above mentioned against the said company,)
he (Hope) never intimated in any manner that there ever existed
any defense to the claim of J. M. Clark & Sons, or that any
attempt would be made to attack said judgment, but left the
*impression* upon him at the time he was retained in the other cases
that he desired J. M. Clark & Sons paid; that he thinks it was
some time during the past year that he heard for the first time of
an attempt to upset the judgment of J. M. Clark & Sons."

The circumstances detailed in the affidavit referred to exhibit the
great laches of which the President was guilty in regard to the said
suit. A forbearance to appear and answer could well consist with
his duty if he believed at the time that the debt was valid and
admitted of no defense; but how could he reconcile it with his
duty to his company and the trust which his relation to it imposed,
that, concluding there was a valid defense, he transmitted (as he
supposed he had done) the papers to Mr. Carroll, in February,
1871, for the purpose of preparing it, and yet until a few days
before 1st March, 1875, he instituted no inquiry as to the condition
of the case, expressed no astonishment at not being called upon by
his counsel for the facts on which it was to rest and the testimony
to sustain it, and, above all, had never been consulted as to the
character of his answer, which necessarily was to be made under
oath? Must he not necessarily have known that no answer had
been filed?

Stranger still, according to his statement, nearly four years had elapsed before he was aware that a judgment had been obtained against the company.   In the face of these facts, can their omission to defend the action be attributed "to accident, inadvertence and mistake, or, at the least, to excusable negligence on the part of their President?"

If the exception now taken to the summons had been made on appearance and in regular form, leave would have been granted to amend, that it might be made to conform to the complaint and the intention of the plaintiffs as to the real party sought to be brought before the Court.   The respondents are not to be placed in a worse condition because, by the neglect of the company, no appearance or defense was made.   The letter and the spirit of the Code provide the fullest means for perfecting the pleadings, so that the true and real issues between the parties may be the more readily ascertained. Mr. Pomeroy, in his new and able treatise on civil remedies, (a work well worthy the careful attention and consideration of the profession,) in Section 565, says: "The new procedure, from its dread lest the proper requirements as to form should degenerate into mere technicalities, and from its opposition to the decision of controversies upon points not involving the merits, has made most ample and liberal provision for amendments."

By the 196th Section of the Code of this State, the Court has power to amend after judgment, in the same manner as it has before, any pleading, process or proceeding in the cause, to correct any mistake in the name of a party, or in any other respect.   It would be certainly, if necessary, more in furtherance of justice now to permit an amendment of the summons to conform to its true intent rather than to set aside a judgment which has stood for four years without complaint, that the Statute of Limitations may be interposed to defeat a claim the justice of which has not been disputed until questioned by the motion in the Court below.

What we have said disposes of the first and fourth grounds on which the application is founded.   The second and third comprise matters of fact, which would have been proper subjects for defense if submitted by way of answer, but into which we are forbidden to look for the purpose of vacating the judgment.

The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.